**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT B. SCRIMGEOUR,
Plaintiff-Appellant,

and

BAYVIEW FARM; DUCK CREEK
PARTNERS, L.P.; KING ROAD
ASSOCIATES; THE SCRIMGEOUR TRUST
UNDER AGREEMENT DATED
JANUARY 3, 1939; THE SCRIMGEOUR
TRUST UNDER COURT ORDER DATED

MARCH 21, 1989,
Plaintiffs,

v.

INTERNAL REVENUE; UNITED
STATES OF AMERICA,
Defendants-Appellees,

HARRY M. WALSH, JR.,
Movant.

No. 97-1856

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-94-2135-DKC)

Argued: April 7, 1998

Decided: July 24, 1998

Before WILLIAMS, Circuit Judge, PHILLIPS,
Senior Circuit Judge, and OSTEEN, United States
District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in which Senior Judge Phillips and Judge Osteen joined.

_____

**COUNSEL**

**ARGUED:** John Francis Wester, Jr., SIDLEY & AUSTIN, Washington, D.C., for Appellant. Michelle Bachand O'Connor, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Edward R. McNicholas, SIDLEY & AUSTIN, Washington, D.C., for Appellant. Loretta C. Argrett, Assistant Attorney General, Jonathan S. Cohen, Thomas J. Clark, Lynne A. Battaglia, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

**OPINION**

WILLIAMS, Circuit Judge:

After the Internal Revenue Service's (IRS) Atlanta Service Center improperly released his tax returns to a third-party, Robert Scrimgeour[1] brought suit in the district court alleging wrongful disclosure of tax returns in violation of I.R.C. § 7431 (West Supp. 1998)[2] and viola-
(Text continued on page 4)

_____

[1] Several entities in which Robert Scrimgeour held an interest were also plaintiffs in the suit: Bayview Farm, Duck Creek Partners, L.P., King Road Associates, Scrimgeour Trust under Agreement dated January 3, 1939, and Scrimgeour Trust under Court Order dated March 21, 1989. For convenience, we refer to the plaintiffs collectively as Scrimgeour.

[2] I.R.C. § 7431 provides for a civil damages action by taxpayers against the IRS, when the IRS has violated provisions of I.R.C. § 6103 (West 1989 & Supp. 1998), which mandates confidentiality of tax returns. The text of I.R.C. § 7431, entitled "Civil damages for unauthorized inspection or disclosure of returns and return information" provides in pertinent part:

(a) In general. --

2

(1) Inspection or disclosure by employee of United States. -- If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

. . . .

(c) Damages. -- In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of --

(1) the greater of --

(A) $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or

(B) the sum of --

(i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus

(ii) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus

(2) the costs of the action.

I.R.C. § 7431 (West Supp. 1998).

Section 6103, entitled "Confidentiality and disclosure of returns and return information" provides:

(a) General rule. -- Returns and return information shall be confidential, and except as authorized by this title--

(1) no officer or employee of the United States,

(2) no officer or employee of any State, any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section, and

(3) no other person (or officer or employee thereof) who has

3

tions of the Privacy Act, 5 U.S.C.A. § 552a(b) & (c) (West 1996 & Supp. 1998).**3** At the conclusion of a three-day bench trial, the district court determined that the tax returns had been negligently released and awarded Scrimgeour statutory damages under I.R.C. § 7431. Because the court determined that the IRS's release of the information was neither willful nor grossly negligent, the district court denied punitive damages under I.R.C. § 7431 and found for the IRS on the Privacy Act claims. Scrimgeour made a post-trial motion for recovery of attorneys' fees under I.R.C. § 7430 (West Supp. 1998).**4** The dis-

_____

> or had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (6) or (12) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

> shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term"officer or employee" includes a former officer or employee.

I.R.C. § 6103 (West Supp. 1998). After setting out the general rule, I.R.C. § 6103 provides a series of exceptions, none of which are relevant here.

**3** "The Privacy Act of 1974 was enacted to `protect the privacy of individuals identified in information systems maintained by Federal agencies,'" Aquino v. Stone, 957 F.2d 139, 141 (4th Cir. 1992) (quoting Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896 (1974)), and to "safeguard[ ] the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records," Wilborn v. Dep't of Health & Human Services, 49 F.3d 597, 600 (9th Cir. 1995). The Act states:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.

5 U.S.C.A. § 522a(b) (West Supp. 1998). An award of damages is authorized only in the case of "intentional or willful" violations. See 5 U.S.C.A. § 552a(g)(1), (4) (West 1996).

**4** The text of that section, entitled "Awarding of costs and certain fees" provides in pertinent part:

4

trict court denied the motion on the ground that I.R.C. § 7430 did not apply to actions arising under I.R.C. § 7431 that were unrelated to any tax proceeding.

Scrimgeour appeals the district court's ruling that the IRS's release of his tax returns was neither willful nor grossly negligent. Additionally, he appeals the denial of attorneys' fees. Finding no error, we affirm.

I.

The material facts are not disputed. The events leading to the release of Scrimgeour's tax returns began in May 1993 when his sister, Sally Scrimgeour, filed suit in the Circuit Court of Talbot County, Maryland. That suit was part of an ongoing dispute between the siblings relating to the management of family trust funds and property. In an effort to obtain information to support the lawsuit, Sally Scrimgeour's attorney, Harry M. Walsh, Jr., submitted two sets of forty-three requests for tax returns related to Scrimgeour, the Scrimgeour trust, and other entities in which Scrimgeour had a financial interest. Each of the requests consisted of a completed Form 4506,[5] signed by Walsh, and a "clearly insufficient" subpoena. (J.A. at 380.) One set of requests was submitted to the IRS's Philadelphia Service Center and the other set to the Atlanta Service Center.

_____

> (a) In general. -- In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for --
>
> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and
>
> (2) reasonable litigation costs incurred in connection with such court proceeding.

I.R.C. § 7430 (West Supp. 1998).

[5] Form 4506 is the form appropriately used when a taxpayer requests a copy of his or her own tax return.

5

When the Philadelphia Service Center received the requests for the release of the tax returns, the IRS personnel immediately noticed that the requests were invalid and refused to supply the requested information. At the Atlanta Service Center, however, the deficiencies in the requests went unnoticed, and Scrimgeour's tax returns were released to Walsh.

Robert Scrimgeour did not become aware that his tax returns were being improperly released until the returns were produced during a November 9, 1993, deposition related to the suit filed by his sister. After the deposition had concluded, on November 24, 1993, Lester Fant, Scrimgeour's attorney, wrote and hand delivered a letter to the IRS's Office of Chief Inspector informing the IRS of the improper release of his client's tax returns. The letter also requested an investigation and asked that the IRS intervene to stop the ongoing release of Scrimgeour's tax returns.

The Office of Chief Inspector sent Fant's letter to the Deputy Inspector for Internal Security who subsequently passed the letter on to the IRS Integrity and Hotline Section. The Deputy Director who oversaw the Hotline Section, Keith Alan Kuhn, treated Fant's letter as a request for a criminal investigation of the releases that had occurred at the Atlanta Service Center and forwarded the letter to the Regional Office of Inspector in Philadelphia. After following this circuitous route, Fant's letter was assigned to an inspector in Washington, D.C. In the interim, while the letter was changing hands, the Atlanta Service Center improperly continued to release Scrimgeour's tax returns.

On February 7, 1994, the inspector met with Fant and discussed the factual background of the allegations in the letter. After their discussion, the inspector met with an attorney in the IRS Office of Assistant Chief Counsel to obtain a legal opinion regarding whether any criminal violations occurred when the Atlanta Service Center released Scrimgeour's tax returns. After discussion, the inspector and attorney agreed that the allegations of criminal wrongdoing were not supported by the facts. Thereafter, the inspector and the attorney arranged a conference call with the Atlanta Service Center to notify it regarding the improper disclosures and to obtain further information. After this telephone call to the Atlanta Service Center, employees were notified that

6

they should not process any additional Forms 4506 submitted by Walsh.

## II.

Scrimgeour filed his complaint in the United States District Court for the Southern District of Maryland on August 1, 1994.

Although the initial complaint did not enumerate the requested damages, by the date of the pretrial conference Scrimgeour sought: (1) actual damages of $110,000 for additional attorneys' fees incurred in the lawsuit with his sister; (2) actual damages of $100,000 for emotional distress; (3) punitive damages of $10 million for the IRS's willful and/or grossly negligent actions; and (4) attorneys' fees. In the alternative, Scrimgeour sought statutory damages of $1000 for each of the unauthorized releases.

The case proceeded to a bench trial, at the conclusion of which the district court ruled that the IRS had negligently released Scrimgeour's tax returns and awarded statutory damages of $61,000 in accordance with the provisions of I.R.C. § 7431(c)(1)(A) (West Supp. 1998).[6] The district court, however, determined that the IRS had released the tax information as the result of simple negligence, not as the result of gross negligence or willfulness, and declined to award punitive damages. See I.R.C. § 7431(c)(1)(B)(ii) (West Supp. 1998). Further, because the district court determined that the release of the tax returns was neither intentional nor willful, the court entered judgment for the IRS on the Privacy Act claim. See 5 U.S.C.A.§ 552a(g)(4) (West 1996) (stating that damages for violations of the provisions of the Privacy Act relating to the unauthorized release of information are recoverable only when the agency acted in an intentional or willful manner).

_____

[6] Robert Scrimgeour, Scrimgeour Trust under Court Order dated March 21, 1989, Bayview Farm, and King Road Associates prevailed on their claims for statutory damages for the release of sixty-one tax documents. The district court dismissed for lack of standing the claims of Duck Creek Partners, L.P., and Scrimgeour Trust under Agreement dated January 3, 1939, because those entities were dissolved prior to the release of the tax returns. Scrimgeour does not appeal this ruling.

7

After the trial, Scrimgeour made a motion for reasonable litigation costs under I.R.C. § 7430 (West Supp. 1998), which provides for the award of attorneys' fees in litigation with the IRS under certain conditions. Scrimgeour argued that he met the requirements of I.R.C. § 7430 because: (1) he had exhausted his administrative remedies, see I.R.C. § 7430(b)(1); (2) he had substantially prevailed with respect to the amount in controversy or the most significant issue presented, see I.R.C. § 7430(c)(4)(A)(i); (3) the IRS's position in the litigation was not substantially justified, see I.R.C. § 7430(c)(4)(B)(i); and (4) his net worth was not in excess of $2 million at the time the action was filed, see I.R.C. § 7430(c)(4)(D). The district court, however, did not reach the merits of these factual assertions because it determined that, as a matter of statutory construction, I.R.C. § 7430 did not apply to civil actions arising under I.R.C.§ 7431 that are based upon releases of tax returns that did not occur during the course of tax collection or a tax-related proceeding.

Subsequently, Scrimgeour filed this appeal. He argues that the district court erred when it determined that the IRS did not act in a willful or grossly negligent manner when it released his tax returns. Additionally, Scrimgeour asserts that the district court's legal analysis of the attorneys' fees statute was incorrect. We address these challenges to the district court's decisions in turn.

III.

First, Scrimgeour argues that willfulness is a legal question subject to de novo review and that the release of his tax returns was willful as a matter of law because the IRS made a conscious decision to pursue an investigation into potential criminal wrongdoing at the Atlanta Service Center before ensuring that the improper releases of his tax returns ceased.[7] Therefore, he contends that the district court's deci-

_____

[7] Section 6103 of the tax code, the provision that safeguards the confidentiality of tax returns, and of which the plaintiff must prove a violation to qualify for damages under I.R.C. § 7431, contains a limited privilege for the release of tax returns in the course of an investigation. See I.R.C. § 6103(k)(6) (West Supp. 1998). That section provides as follows:

> An internal revenue officer or employee may, in connection with his official duties relating to any . . . criminal tax investigation

sion to deny punitive damages under I.R.C. § 7431(c)(1)(B)(ii) was erroneous. Additionally, Scrimgeour asserts that the definition of willfulness under the Privacy Act is "materially indistinguishable" from that which applies under I.R.C. § 7431(c)(1)(B)(ii). Thus, Scrimgeour contends that the district court erred when it ruled for the IRS on his Privacy Act claims. We address these claims in turn.

A.

Section 7431(c)(1)(B)(ii) of the Internal Revenue Code allows for the recovery of punitive damages in wrongful disclosure cases only when the disclosure was willful or grossly negligent.**8** Under

_____

or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information that is not otherwise reasonably available . . . with respect to . . . any provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

Id. The applicable regulation, 26 C.F.R. § 301.6103(k)(6)-1(b)(4) (1993), authorizes the release of tax returns to the extent necessary to obtain information "[t]o establish or verify misconduct (or possible misconduct) or other activity proscribed by the internal revenue laws." Id. For reasons that are not entirely clear from the record, the IRS did not raise this potential defense below.

**8** Punitive damages are not awarded for the purpose of compensating the victim for a wrong, but rather are "`assessed for the avowed purpose of visiting a punishment upon the defendant;'" "rationalized on the ground that [they] deter[ ] persons from violating the rights of others," and "justified as a `bounty' that encourages private lawsuits seeking to assert legal rights." Smith v. Wade, 461 U.S. 30, 58 (1983) (Rehnquist, J., dissenting) (emphasis in original) (quoting C. McCormick, Law of Damages 275 (1935)). Because such damages represent an extraordinary award, plaintiffs are often required to prove that the defendant acted with a higher level of culpability than would otherwise be required for the recovery of compensatory damages. See, e.g., Wedeman v. City Chevrolet Co., 366 A.2d 7, 13 (Md. 1976) ("wanton or reckless disregard for the rights of others"); Cook v. Lanier, 147 S.E.2d 910, 915 (N.C. 1966) (noting that actual malice, willful or wanton misconduct, or reckless indifference to the rights of others is required for an award of punitive damages); Hicks v. McClandlish, 70 S.E.2d 629, 631 (S.C. 1952) (requiring wantonness, willfulness, or recklessness). In this instance, Congress has mandated that the plaintiff prove either willfulness or gross negligence to obtain punitive damages. See I.R.C. § 7431(c)(1)(B)(ii) (West Supp. 1998).

§ 7431(c)(1)(B)(ii), grossly negligent[9] conduct is "that which is . . . marked by wanton or reckless disregard of the rights of another." Barrett v. United States, 100 F.3d 35, 40 (5th Cir. 1996) (internal quotation marks omitted) (enunciating the meaning of gross negligence under I.R.C. § 7431(c)(1)(B)(ii)). In contrast, simple negligence is the lack of due care. See Zfass v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997) ("Negligence denotes `lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" (quoting Korshin v. Commissioner, 91 F.3d 670, 672 (4th Cir. 1996))).

Whether the IRS acted with the requisite gross negligence for an award of punitive damages under § 7431 is a factual issue. See id. On appeal from a bench trial, we may only set aside findings of fact if they are clearly erroneous, and we must give due regard to the opportunity of the district court to judge the credibility of the witnesses. See Fed. R. Civ. P. 52(a). "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Zfass, 118 F.3d at 188 (alteration in original and internal quotation marks omitted).

In the present case, the district court analyzed the actions taken by the IRS at the Atlanta Service Center both before and after the receipt of Fant's letter.

1.

First, the district court analyzed the circumstances surrounding the initial release of Scrimgeour's tax returns from the photocopy unit at the Atlanta Service Center in response to the obviously improper Forms 4506. The district court concluded that the initial releases were

_____

[9] The district court found that the IRS was not grossly negligent in the handling of Scrimgeour's tax returns and therefore did not address the higher standard of willfulness. Thus, we also begin our analysis with a consideration of whether the IRS was grossly negligent.

10

the result of negligence. In support of its conclusion that the photo-copy unit was negligent, the district court stated that a reasonable person in the IRS employees' position "should have realized [the requests] didn't look right; they didn't look normal; they didn't look the same as they had been used to processing." (J.A. at 380-81.) Further, the district court noted that the initial disclosures were "a negligent oversight, a failure of making sure that the training stuck and that employees in the photo copy unit in Atlanta knew to ask a supervisor or the disclosure officer if they saw a subpoena." (J.A. at 383.)

We are not "left with a definite and firm conviction" that the district court made a mistake when it concluded that the initial release of Scrimgeour's tax returns was the result of simple negligence. The record reflects that the employees who responded to the Forms 4506 were simply careless. They processed and released tax returns that the employees in the Philadelphia Service Center immediately recognized to be inadequate. There is no evidence on the record before us that indicates that the Atlanta Service Center's response reflects any greater level of culpability than simple negligence, i.e., lack of due care. To prevail under § 7431(c)(1)(B)(ii) Scrimgeour bears the burden of demonstrating that the employees' actions were "marked by wanton or reckless disregard of the rights of another," <u>Barrett</u>, 100 F.3d at 40 (internal quotation marks omitted). Because there was no evidence presented showing that the service center personnel possessed the higher level of culpability required for gross negligence, the district court did not clearly err when it held that the initial releases of Scrimgeour's tax forms did not meet the threshold for recovery under either § 7431(c)(1)(B)(ii).

2.

Scrimgeour argues, however, that even if the initial disclosures were not willful or grossly negligent, the disclosures that continued after Fant's letter was received at the IRS investigative division were the product of willfulness. Scrimgeour's argument has two components: (1) that the IRS acted willfully when it opted to place a higher priority on investigating possible criminal wrongdoing at the Atlanta Service Center than it placed on stopping ongoing releases of his tax returns; and (2) that the IRS willfully mishandled the investigation when it passed Fant's letter from hand to hand delaying the investiga-

11

tion process and thereby unnecessarily allowing the Atlanta Service Center to continue disclosing his tax information. We address these contentions in turn.

a.

First, the district court determined, and we agree, that the IRS's decision to pursue a criminal investigation was not the product of gross negligence. Fant's letter implied that the releases might have been the product of an illegal arrangement between Walsh and someone within the Atlanta Service Center and specifically requested that the IRS investigate this possible illicit connection. To facilitate the criminal investigation, there was no immediate order issued to stop the continuing release of Scrimgeour's tax returns. The investigator who first handled the letter thought that the investigation would be foiled should Walsh's contact at the Atlanta Service Center discover that the IRS was seeking the source of the releases. With the benefit of omniscient hindsight, this judgment has been called into question because of the length of the ensuing delay. The initial decision, however, was made by the IRS's investigative team in an effort to safeguard Scrimgeour's rights, as well as the rights of all other taxpayers whose forms were processed at the Atlanta Service Center. Because the IRS investigative team was using procedures intended to follow-up on the taxpayer's request for an investigation, ultimately to protect his privacy rights, we do not believe that the district court clearly erred when it determined that this decision-making process was not grossly negligent.

b.

Scrimgeour further argues that the approximately ten-week delay in stopping the release of his tax returns that occurred while the IRS was pursuing its investigation of the Atlanta Service Center and Fant's letter was passed from hand to hand in various investigative divisions of the IRS constituted gross negligence.

We agree with Scrimgeour that the delay was unnecessary. Fant's complaint got tangled in the web of the IRS's bureaucracy and traveled from Washington, D.C., to Philadelphia and back again before the investigation was concluded and the IRS took steps to stop the

12

releases of Scrimgeour's tax returns. This delay, however, does not demonstrate gross negligence. The letter's journey was the result of a plodding and inefficient attempt to remedy the complaint; gross negligence requires a higher level of culpability than inefficiency in accomplishing the objective -- it requires wanton or reckless disregard of rights. The record reflects that each individual who came into possession of the letter used his best professional judgment to resolve Fant's complaint. Therefore, here too, the district court's conclusion was not clearly erroneous.

Both the IRS's initial release of information in response to clearly inadequate requests and its snail-paced handling of Fant's complaint did fall below an objective standard of reasonableness, and thus the IRS was properly liable for damages under I.R.C.§ 7431's negligence standard. The district court, however, did not clearly err when it determined that the IRS was not grossly negligent. We need not separately assess whether the IRS's conduct was willful. If conduct does not meet the threshold of gross negligence, it cannot meet the slightly higher level of culpability embraced by the willfulness standard. Therefore, the district court's denial of punitive damages under § 7431 was appropriate.

B.

Scrimgeour's Privacy Act claims rest upon the identical factual allegations as did his claims under I.R.C. § 7431. In contrast to I.R.C. § 7431, the Privacy Act establishes a standard of "intentional or willful" behavior that, "`[o]n a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct . . . is viewed as only somewhat greater than gross negligence.'" Waters v. Thornburgh, 888 F.2d 870, 875 (D.C. Cir. 1989) (quoting Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, 120 Cong. Rec. 40,405, 40,406 (1974), reprinted in Legislative History of the Privacy Act of 1974 at 991 (1976)). Thus, the standard for intentional or willful behavior under the Privacy Act has been articulated as "an act committed `without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" Id. (quoting Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984)). Because the Privacy Act requires that a plaintiff meet a standard higher than gross negligence to prove liability, whereas I.R.C.

13

§ 7431(c)(1)(B)(ii) specifies gross negligence, the plaintiff must demonstrate greater culpability on the part of the defendant to support a finding of liability under the Privacy Act. Therefore, because, as we just determined, the district court did not clearly err when it determined that the IRS was not grossly negligent, Scrimgeour cannot demonstrate the higher standard of culpability required for recovery under the Privacy Act.

IV.

Scrimgeour also challenges the district court's denial of his post-trial request for an award of attorneys' fees under I.R.C. § 7430. The district court ruled that § 7430 did not apply to actions for unlawful disclosure of tax returns arising under I.R.C. § 7431 when a disclosure was not made during the course of the IRS's effort to collect, determine, or refund a tax, refund, or penalty. Applying our de novo standard of review to this statutory construction question, see United States v. Linney, 134 F.3d 274, 282 (4th Cir.), cert. denied, 118 S. Ct. 1852 (1998), we affirm.

Internal Revenue Code § 7430 provides for an award of attorneys' fees when the taxpayer prevails in an action "[i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title."[10] I.R.C. § 7430(a) (emphasis added). The district court ruled that, although Scrimgeour's action under I.R.C. § 7431 clearly qualified as a court proceeding brought against the United States, his tax returns were not released "in connection with the determination, collection, or refund of any tax, interest or penalty," because the release had occurred in connection with a family controversy over a trust, not within the context of an adjudication or investigation of a tax dispute. The district court, therefore, ruled that the release of Scrimgeour's tax returns did not meet the requirements of I.R.C. § 7430, and he could not recover attorneys' fees.

_____

[10] Currently, several amendments to I.R.C. § 7430 are pending as part of the Internal Revenue Service Reform and Restructuring Act. See H.R. 2676, 105th Cong. § 311 (1997). The proposed amendments do not affect the language at issue here.

14

Scrimgeour asserts that the district court wrongly decided this legal question on two theories. First, he asserts that damages recovered under I.R.C. § 7431 constitute a "penalty" when that term is accorded its common and ordinary meaning. Therefore, Scrimgeour contends that all actions arising under I.R.C. § 7431 occur in connection with the determination of a penalty because the act of meting out damages under I.R.C. § 7431 is itself the act of determining a penalty. Alternatively, Scrimgeour argues that all illegal releases of tax returns cognizable under § 7431 are made in connection with the determination of a tax, refund, or penalty because the tax return was initially filed so that the IRS could determine the proper tax due. Therefore, Scrimgeour contends, the subsequent storage of the tax return, and its eventual unauthorized release, also occur in connection with the determination of a tax. We address these arguments <u>seriatim</u>.

A.

Scrimgeour first argues that I.R.C. § 7430 applies to actions arising under I.R.C. § 7431 because the latter section assesses a penalty against the IRS for wrongful disclosure when one gives "penalty" its common and ordinary meaning. Scrimgeour cites to us many possible definitions of "penalty" in support of his assertion.

First, he proffers that a "penalty" is "an`elastic' term which includes `any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to damages suffered.'" (Appellant's Br. at 32-33 (quoting <u>O'Sullivan v. Felix</u>, 233 U.S. 318, 324 (1914)).) Scrimgeour also offers this definition, "`[a]n enactment which has as its purpose the punishment of conduct perceived as wrongful . . . regardless of the terminology employed by the legislature.'" (Appellant's Br. at 33 (citing <u>United States v. Unsecured Creditors' Comm.</u>, 977 F.2d 137, 139 (4th Cir. 1992)).) Further, Scrimgeour cites <u>Black's</u> definition of "penalty," "`[a]n elastic term with many different shades of meaning' including`[a] statutory liability imposed on [a] wrongdoer in [an] amount which is not limited to the damages suffered by the party wronged.'" (Appellant's Br. at 33 (alterations in original) (quoting <u>Black's Law Dictionary</u> 1133 (6th ed. 1990)).) We note that none of these definitions has its origins in the tax code.

15

Scrimgeour is correct in asserting that we begin our statutory analysis with the plain language of the statute. See Alexander S. v. Boyd, 113 F.3d 1373, 1383 (4th Cir. 1997), cert. denied, 118 S. Ct. 880 (1998). "If the `statutory language is unambiguous and the statutory scheme is coherent and consistent,' our inquiry ends." Id. (quoting Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997)). Words that are not defined within the statute are accorded their plain and ordinary meaning. See id. at 1383. "[W]here words are employed in a statute which ha[ve] . . . a well-known meaning at common law or in the law of this country, [however] they are presumed to have been used in that sense." EEOC v. Gilbarco, Inc., 615 F.2d 985, 990 (4th Cir. 1980) (internal quotation marks omitted) (first alteration in original). Outside the context of the tax code, "penalty" has the broad meanings Scrimgeour urges upon us. Within the tax code, however, the word "penalty" is a term of art with a more circumscribed meaning.

Although it is not specifically defined in the tax code, "penalty" is used in two contexts. First, it is frequently used in the phrase "under penalty of perjury." See, e.g., I.R.C.§ 25(e)(2) (West Supp. 1998). That usage is plain and needs no further explanation here. In all of its other iterations within the tax code, the term "penalty" is used to describe a fine or other punishment taxpayers face when they fail to comply with the directives of the Internal Revenue Code. See, e.g., I.R.C. § 72(q)(1) (West Supp. 1998); I.R.C.§ 138(c)(2) (West Supp. 1998). Nowhere within the code is "penalty" used to describe compensatory damages[11] that can be recovered by the taxpayer for gov-

---

[11] The damages awarded under § 7431 are compensatory in nature, designed to compensate the plaintiff for an invasion of privacy. Cf. Robert P. Butts, IRS Liability for Wrongful Disclosures Made in the Process of Tax Collection: Should the Validity of the Underlying Collection Activity be Considered?, 102 Dick. L. Rev. 67, 71 (1997) (noting that § 7431 protects taxpayer privacy). The $1,000 statutory damage award specified in I.R.C. § 7431(c)(1)(A), is included for the benefit of taxpayers. Actual damages for the invasion of privacy that occurs when tax returns are wrongfully disclosed can be hard to quantify. In order to encourage taxpayers to act as "private attorneys general" and pursue suits against the IRS for violations of I.R.C. § 6103, Congress enacted the statutory damages provision to ensure that in meritorious cases of wrongful release a taxpayer would not walk away from the courthouse empty-handed for failure of proving damages. See generally, Barber v. Kimbrell's, Inc., 577 F.2d 216, 222 n.14 (4th Cir. 1978) (explaining the purpose of statutory damages).

16

ernmental wrongdoing.**12** Therefore, construing the tax code as a whole, we cannot agree with Scrimgeour's argument that damages recovered under I.R.C. § 7431 constitute a "penalty" as that word is used in the code. Cf. Alexander S., 113 F.3d at 1384 ("[I]dentical terms within an Act should be given the same meaning."); Salomon Forex, Inc. v. Tauber, 8 F.3d 966, 975 (4th Cir. 1993) (stating that words recurring within statutes must be interpreted consistently).

B.

Scrimgeour next asserts that even if I.R.C. § 7431 does not itself provide for the determination of a penalty, I.R.C.§ 7430 still applies to his cause of action. Scrimgeour asserts that the wrongfully released tax returns were stored after the IRS computed and determined the tax, refund, or penalty due. Because the storage of the tax return was a necessary by-product of the tax collection process, Scrimgeour contends that the release of his tax return from storage must have occurred "in connection with the determination, collection, or refund of any tax, interest, or penalty under [Title 26]." I.R.C. § 7430(a).

Currently, there is some disagreement among the circuits on the issue of whether an action under I.R.C. § 7431 automatically falls within the attorneys' fees provision of I.R.C. § 7430. The Fifth Circuit has held that all I.R.C. § 7431 actions in which the release of tax returns took place during the course of a tax proceeding occur "in connection with the determination, collection, or refund of any tax, interest, or penalty" because such actions arise directly as a result of IRS possession of tax records. See Huckaby v. United States, 804 F.2d 297, 298 (5th Cir. 1986). On the other hand, the Eighth Circuit, addressing the question of whether a release of tax returns occurring outside the tax computation system meets § 7430's requirements, held that a case-by-case analysis is required. See McLarty v. United States, 6 F.3d 545, 548 (8th Cir. 1993). Scrimgeour's argument tracks the Fifth Circuit's analysis.

_____

**12** Such recoveries are referred to as "civil damages." I.R.C. § 7431 (West Supp. 1998); I.R.C. § 7432 (West 1989); I.R.C. § 7433 (West Supp. 1998); I.R.C. § 7435 (West Supp. 1998).

17

In Huckaby, the Fifth Circuit held that an unauthorized release of tax return information had occurred because the income tax returns were in the IRS's possession for the purpose of determining tax liability. See Huckaby v. United States, 804 F.2d 297, 298 (5th Cir. 1986). Because the tax records were put in storage immediately after the tax determination process had occurred, the Fifth Circuit reasoned that their continued storage and eventual release were linked to the determination of the initial tax. Therefore, the release occurred "in connection with the determination, collection, or refund of any tax, interest, or penalty." The Fifth Circuit reached this conclusion in circumstances where the release of tax return information occurred during a proceeding directly related to the tax collection process -- the returns had been released to state tax authorities. See id. at 300-301. Although the Fifth Circuit announced a broad rule in Huckaby, that court has not ruled specifically whether a release of tax returns into a forum completely unrelated to taxes meets § 7430's "in connection with" requirement. The Ninth Circuit has followed the Fifth Circuit's approach, noting that its interpretation was a broad reading of the "in connection with" language of I.R.C. § 7430 and that a broad reading was proper. See Smith v. Brady, 972 F.2d 1095, 1099-1100 (9th Cir. 1992).

In contrast, the Eighth Circuit, specifically addressing the situation in which tax returns were wrongfully released in non-tax-related circumstances, determined that the IRS's mere continuing storage of a taxpayer's old tax returns did not automatically entitle a plaintiff to recovery of attorneys' fees under I.R.C. § 7430's "in connection with" language. See McLarty v. United States, 6 F.3d 545, 548 (8th Cir. 1993).

In McLarty, tax return information was disclosed during the course of a challenge to a pro hac vice admission of an attorney. See id. The Eighth Circuit reasoned that the release of tax return information had not occurred "in connection with the determination, collection, or refund" of his taxes, but rather had occurred during the proceedings relating to his pro hac vice admission. See id. The Eighth Circuit explained that I.R.C. § 7430 applied only to "proceedings . . . brought . . . in connection with the determination, collection, or refund of any tax," and that an action under I.R.C. § 7431 was not per se a proceeding related to the determination of tax liability. See id. The court fur-

18

ther noted that a proceeding under § 7431 is brought to vindicate rights under § 6103, which protects tax payer confidentiality generally and is not limited to determination, collection, or refund proceedings. See id. Therefore, in McLarty, the Eighth Circuit held that an award of attorneys' fees under § 7430 was not warranted when the release of tax information occurred during the course of a pro hac vice admission proceeding because the pro hac vice proceeding was completely unrelated to tax matters. See id. Under the Eighth Circuit's reasoning, the question of whether § 7431 proceedings qualify for recovery of attorneys' fees under § 7430 must be addressed on a case-by-case basis after examining the context of the challenged release.

In analyzing the issues presented in this case, we begin by recognizing that proceedings brought under § 7431 do not automatically qualify as "an[ ] administrative or court proceeding which is brought by or against the United States in connection with the determination, collection or refund of any tax, interest or penalty under this title." I.R.C. § 7430(a). We do not question that tax forms are initially filed to facilitate tax or refund computation. However, when a tax return is stored at the IRS and is not reexamined, the determination, collection, or refund of the tax, interest, or penalty has been completed. The return may be revisited later for a new determination, but in the interim the IRS is acting merely as a document repository. It is not daily determining and redetermining the tax owed by or refund due to the taxpayers represented by the returns. The appropriate time-frame for determining whether an improper release has occurred in connection with a tax matter is the time of the release, not the time of storage. Although all tax forms are stored as the result of tax computation activities, not all releases occur "in connection with the determination, collection, or refund of any tax, interest, or penalty." Therefore, we agree with the Eighth Circuit that the inquiry of whether a § 7431 action meets the § 7430 requirements for recovery of attorneys' fees is contextual.

Examining the context here, we hold that the release of Scrimgeour's tax returns from storage, into a non-tax-related forum has not occurred "in connection with the determination, collection, or refund of any tax" and he does not qualify for attorneys' fees under § 7430. Scrimgeour was not being audited, nor was he the subject of a tax investigation of any kind. Rather, the release of Scrimgeour's tax

19

returns occurred during extra-judicial discovery undertaken by an attorney in the course of an intra-family dispute over the management of a trust.

We believe this result is not only mandated by the statutory language, but also by precedent. The Supreme Court has noted that an attorneys' fee award statute is a limited waiver of sovereign immunity. See Ardestani v. INS, 502 U.S. 129, 137 (1991). As such, it must be narrowly construed in favor of the sovereign. See id.; Research Triangle Inst. v. Board of Governors of the Fed. Reserve Sys., 132 F.3d 985, 987 (4th Cir. 1997). Section 7430 does not specifically authorize an award of attorneys' fees for an unauthorized release of tax returns. Therefore, we believe that the narrower construction of the statute, which examines each release on a case-by-case basis to determine whether it has occurred in connection with a tax matter and awards fees only when the tax returns have been inappropriately released in the course of a tax-related proceeding or investigation, is required.

V.

Based upon the foregoing discussion, the rulings of the district court are affirmed in all respects.

AFFIRMED

20