**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FEDERAL FINANCIAL COMPANY,
Assignee of the Federal Deposit
Insurance Company as Receiver for
the National Bank of Washington,

No. 99-2516

<u>Plaintiff-Appellant,</u>

v.

JOHN L. KNOTT, JR.,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-4007-AW)

Argued: June 6, 2000

Decided: July 10, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Audra Joy Small, BROMBERG, ROSENTHAL, SIEGEL
& GOODMAN, Rockville, Maryland, for Appellant. Robert Olin

Johnston, JOHNSTON & WESTERFIELD, P.C., Washington, D.C., for Appellee. **ON BRIEF:** Jonathan R. Bromberg, Barry J. Rosenthal, BROMBERG, ROSENTHAL, SIEGEL & GOODMAN, Rockville, Maryland, for Appellant. Mark Westerfield, JOHNSTON & WESTERFIELD, P.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Federal Financial Company (FFC) filed suit in the United States District Court for the District of Maryland seeking to recover the balance of a loan that John Knott, Jr. (Knott) had unconditionally guaranteed on behalf of Capitol Knolls Limited Partnership (Capitol Knolls). After a bench trial, the district court ruled in favor of Knott on the grounds that FFC had not met its burden of showing that Capitol Knolls was in default in its payments; that the National Bank of Washington (NBW), the bank with whom Capitol Knolls entered the loan agreement, breached the loan agreement prior to any default by Capitol Knolls by failing to fund Capitol Knolls; and that the Federal Deposit Insurance Company (FDIC) impaired the collateral. FFC noted a timely appeal of this judgment. Finding no reversible error, we affirm.

I.

In 1987, Capitol Knolls entered into various loan agreements with NBW in order to acquire and construct a townhome community. In December 1989, after unforeseen environmental problems delayed the project, Capitol Knolls entered into a new loan agreement with NBW under which NBW agreed to advance up to $5,000,000 to Capitol Knolls through monthly payments. Knott unconditionally guaranteed this loan on behalf of Capitol Knolls.[1] In May 1990, Capitol Knolls

_____

[1] Knott was the president of Phillips and Knott Community Developers, Inc., which was a general partner of Capitol Knolls.

2

was late on at least one of its monthly interest payments.**2** During the same time period, in either April or May 1990, NBW stopped funding the project.**3** In July 1990, NBW sent a letter to Capitol Knolls expressing its concern over overdue payments, and strongly urging Capitol Knolls to pay the amount due so that NBW would not have to "consider the alternatives available." (J.A. at 490.) This letter did not, however, formally notify Capitol Knolls that it was in default. On August 10, 1990, the Comptroller of the Currency declared NBW insolvent and appointed the FDIC as Receiver. In November 1990, the FDIC sent Capitol Knolls a formal written notice of default. This was the first formal written notice of default that Capitol Knolls or Knott received relating to the loan agreement.**4** On July 21, 1995, the FDIC sold and assigned all right, title, and interest in and to the deed of trust and loan guaranty to FFC. On February 19, 1996, FFC made a formal demand upon Capitol Knolls for payment of the loan. On March 26, 1996, FFC foreclosed upon the property.

On December 23, 1996, FFC filed a civil action against Knott to recover the balance of the loan under the guaranty. At a bench trial, Knott testified that in March or April of 1990,"NBW stopped funding

_____

**2** On May 29, 1990, Capitol Knolls sent a check to NBW to cover the overdue interest payment as of that month. The May check was later canceled and replaced by another check in June 1990. Knott testified that the May check was canceled because NBW lost the check, while FFC maintains that the May check was replaced because it was dishonored, and that even if the check was lost, Capitol Knolls was at least two months late in its interest payments.

**3** FFC's counsel conceded at oral argument that NBW stopped funding the project in April or May 1990.

**4** The loan agreement between Capitol Knolls and NBW provided that upon an event of default by Capitol Knolls -- such as a failure by Capitol Knolls to make payments -- NBW had to give written notice of the default to Capitol Knolls and stipulate a date by which Capitol Knolls had to cure the default. NBW was required to give this notice if it wanted to pursue its remedies under the agreement, and, if Capitol Knolls failed to cure the default after the written notice, NBW could then "without further notice declare [Capitol Knolls] to be in default." (J.A. at 450.) As noted above, Capitol Knolls received its first written notice of default from the FDIC in November 1990, well after NBW had been declared insolvent.

the loan on a consistent basis," (J.A. at 189), that Capitol Knolls continued to pay its interest payments until the time that NBW was declared insolvent, and that although Capitol Knolls was at one point behind in its interest payments, it was current on its payments on August 10, 1990, when NBW was declared insolvent. Knott also testified that shortly before NBW was declared insolvent, NBW and Capitol Knolls had been attempting to negotiate a means of moving the project forward, but that the FDIC stalled the project after taking over the loan by, among other things, failing to respond to Knott's requests to find a way to complete the project. Knott stated that because the FDIC stalled the project at a critical time, the project lost most of its value. Thomas Helt, former president of McIntyre, a construction company that worked on the project, corroborated Knott's testimony concerning NBW's failure to fund Capitol Knolls, testifying that McIntyre had received its last payment in March 1990. The district court explicitly found Knott's testimony to be credible.

Relying upon Knott's testimony and stating that the documentary evidence offered by FFC was inconclusive, the district court found that FFC had not met its burden of proof in showing that Capitol Knolls was in default in its payments. The district court also found that NBW had initially breached the loan agreement and frustrated Capitol Knoll's performance under the loan agreement by failing to fund Capitol Knolls beginning in April or May 1990, and that the FDIC impaired the collateral. On August 31, 1999, the district court entered judgment in Knott's favor. On October 21, 1999, the district court denied FFC's motion to alter or amend the judgment. On November 8, 1999, FFC filed its notice of appeal.

FFC raises several issues on appeal. FFC argues that the district court erred as a matter of law in considering Knott's affirmative defenses because Knott failed to exhaust his administrative remedies pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). FFC also argues that the district court erred in relying upon Knott's and Helt's oral testimony rather than the documentary evidence FFC offered at trial, and that the documentary evidence clearly shows that Capitol Knolls was continuously in default from April 1990. FFC also maintains that the district court erred in concluding that NBW breached the loan agreement prior to any default by Capitol Knolls by failing to fund the project, and that

4

the district court erred in finding that the FDIC impaired the collateral by refusing to cooperate with Capitol Knolls and allowing the collateral to deteriorate.

## II.

"On appeal from a bench trial, we may only set aside findings of fact if they are clearly erroneous, and we must give due regard to the opportunity of the district court to judge the credibility of the witnesses." Scrimgeour v. Internal Revenue, 149 F.3d 318, 324 (4th Cir. 1998). A district court's factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (internal quotation marks omitted). "[W]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." Id. (internal quotation marks omitted) (alteration in original). We review the district court's legal conclusions de novo. See Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999).

We have reviewed the record, briefs, and pertinent case law on this matter, and we have had the benefit of oral argument. Our careful review persuades us that the rulings of the district court were correct.[5]

_____

[5] Although FFC argues that the district court should not have considered Knott's affirmative defenses because he did not exhaust his remedies prior to asserting those defenses, FIRREA's exhaustion requirement does not encompass affirmative defenses. See Bolduc v. Beal Bank, SSB, 167 F.3d 667, 671-72 (1st Cir. 1999) (finding that the Bolducs' defense "does not quite fit within the statutory language that delineates the exhaustion requirement. It is not a claim by the Bolducs seeking any kind of `payment' from any bank"); Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996) (agreeing with other circuits "that true affirmative defenses may still be asserted" even though Tri-State did not exhaust its remedies); Resolution Trust Corp. v. Love , 36 F.3d 972, 976-78 (10th Cir. 1994) (concluding that exhaustion is not required for a court to have jurisdiction over an affirmative defense); Resolution Trust Corp. v. Midwest Fed. Sav. Bank, 36 F.3d 785, 793 (9th Cir. 1994) (concluding that defense of mutual mistake does not require exhaustion); National Union Fire Ins. Co. v. City Sav., FSB, 28 F.3d 376, 393 (3d Cir. 1994) (concluding that "the statute does not create a jurisdictional bar to defenses or affirmative defenses which a party seeks to raise in defending against a claim").

Accordingly, we affirm the judgment in favor of Knott on the reasoning set forth in the district court's oral ruling after trial.

AFFIRMED